IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FREDDIE J. BORDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-2188-JPO |
| ) | |
| ARCH ALUMINUM & GLASS CO., INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

I.  Introduction

This is an employment discrimination case, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and pursuant to 42 U.S.C. § 1981.  On January 8, 2009, following a four-day trial, the jury returned a verdict in favor of the defendant, Arch Aluminum & Glass Co., Inc. ("Arch"), and against the plaintiff, Freddie J. Borders (doc. 88).  Judgment was entered on the jury's verdict the same day (doc. 90).  On January 23, 2009, pursuant to Fed. R. Civ. P. 59, plaintiff timely filed a motion for new trial **(doc. 92)**.  The undersigned U.S. Magistrate Judge, James P. O'Hara,[1] for the reasons explained below, respectfully denies plaintiff's motion.

Plaintiff has not filed a brief in support of his motion.  D. Kan. Rule 7.1(a) requires

---

[1] On October 16, 2008, with the written consent of both parties, this case was reassigned for ultimate disposition, by the then-presiding U.S. District Judge, Hon. Kathryn H. Vratil, to the undersigned magistrate judge (doc. 76).

that, with exceptions not applicable here, motions be accompanied by a supporting brief or memorandum.  Plaintiff's motion could (and perhaps should) be summarily denied, because D. Kan. Rule 7.4 provides: "A motion not accompanied by a required brief or memorandum may, in the discretion of the court, be summarily denied."  The record in this case reflects that plaintiff's counsel is aware of the court's requirement that motions be briefed, i.e., plaintiff has done so in connection with summary judgment and limine motions (docs. 48 & 73).  Nevertheless, in an abundance of caution, lest there be any appeal of this case, the court will briefly address the merits of the motion instead of just summarily denying the motion.

## II.  Background and Uncontroverted Facts

Plaintiff, who is an African-American male, worked for Arch as a truck driver from September 2, 2003 through February 3, 2006.  Plaintiff reported to Arch's dispatcher, Bob Naylor, who is Caucasian.  The chain of command had Naylor reporting to the branch manager, who was Scott Bridges up to September 2005, and Doug Couch from September 2005 through the date of plaintiff's termination and up to July 2007.

Beginning in December 2003, Arch assigned plaintiff a route from Kansas City, Kansas to St. Louis, Missouri.  Each work day, plaintiff drove a loaded truck of glass from Kansas City to a meeting point near St. Louis, where he switched trucks with the St. Louis driver.  Plaintiff would then immediately drive back to Kansas City with an Arch truck which usually was empty (or at most was very lightly loaded).  Plaintiff exchanged trucks in this fashion with Dale Moore from June 14, 2004 to January 7, 2005, and with Gary Kromat from January 26, 2005 to February 3, 2006.

Kromat complained to Arch's management that plaintiff was arriving late to the early morning drop-off location in St. Louis.  In late 2005 or early 2006, to avoid any disputes between plaintiff and Kromat about who was arriving late, Naylor told *both* plaintiff and Kromat to contact Naylor by cell phone when they arrived at the drop-off location.  Plaintiff admits he forgot to call in on a few days and that he called in late a few times because it "slipped his mind."

On January 26, 2006, Couch gave plaintiff a written warning which stated:  "Freddie has been told to call Bob Naylor upon arrival of his first stop to meet Gary Kromat.  He has been warned but still fails to call in" (Trial Ex. 5).

On February 3, 2006, Arch fired plaintiff.  Couch told plaintiff he was fired because of the failure to call in as required upon arrival at the drop-off point.  Couch completed a "Termination Record" which stated: "Freddie refuses to call when he arrives in St. Louis.  He has been warned verbally twice and in writing once.  Freddie called in late twice this week and did not call today at all" (Trial Ex. 7).

Plaintiff claims defendant terminated his employment because of his race in violation of Title VII and Section 1981.  Defendant asserts it terminated plaintiff's employment because he did not call in when he arrived at the drop-off point as required.

The jury heard sharply conflicting testimony about the nature and extent of allegedly racist comments and actions by defendant's employees and defendant's handling of possible race discrimination.  Likewise, the jury heard sharply conflicting testimony about how often plaintiff was late or did not call in and how defendant addressed and documented concerns

about plaintiff's performance.

Notably, during his case-in-chief, plaintiff testified that one morning Moore showed him a noose tied onto the truck which Moore exchanged with plaintiff. The parties presented extensive and *widely* varying evidence concerning the noose incident. Indeed, it should be mentioned here that defendant presented evidence from which the jury reasonably could have inferred that, to support his claim of discrimination, plaintiff fabricated certain evidence concerning the noose after the fact, specifically, a photograph (Trial Ex. 15); given this evidence, the jury's ultimate defense verdict came as no great surprise to the trial judge.

In any event, plaintiff now seeks a new trial on the following alternative bases:

1. The court erred in failing to take appropriate remedial action during defendant's cross-examination of Bob Naylor.[2]

2. The court erred in failing to take appropriate remedial action during closing arguments when defense counsel began to show the jury an excerpt from plaintiff's videotaped deposition, which had not been introduced in evidence.

3. The composition of the jury panel violated plaintiff's Seventh Amendment right to a fair jury trial.

4. The verdict was against the weight of the evidence.

---

[2] Naylor was called as the second to last witness during plaintiff's case-in-chief.

III.  Analysis

A.	Procedural Standards

Plaintiff's motion does not mention let alone analyze the heavy procedural burden he bears in connection with the instant motion.[3]  Of course, motions for new trial, which are committed to the sound discretion of the trial court,[4] are generally regarded with disfavor and should only be granted with great caution.[5]  "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence."[6]  The court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial."[7]

As noted earlier, plaintiff chose not to favor the court with a supporting memorandum or brief as required by D. Kan. Rule 7.1(a).  Plaintiff's shirt-tail motion for new trial makes no effort to articulate any of the pertinent facts or provide any meaningful analysis of the issues so briefly raised.  This sort of filing, at the risk of stating the obvious, is not good trial

---

[3] Indeed, plaintiff has completely failed to comply with D. Kan. Rule 7.6(a)(4), which requires that a memorandum in support of a motion refer to "all statutes, rules and authorities relied upon."

[4] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[5] *Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[6] *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

[7] *McDonough Power Equip., Inc.*, 464 U.S. at 553 (further quotation and citation omitted); *see* Fed. R. Civ. P. 61.

advocacy. For reasons far more practical than legal, the court will resist the strong urge to devote its limited resources proceeding to address whether the instant motion is so defective as to call Fed. R. Civ. P. 11(b) into play.[8] Despite plaintiff's omissions, the court now will analyze each of his four post-trial arguments in light of the general procedural standards, and will also address the specific legal principles governing those arguments.

B.   Cross-Examination of Bob Naylor

Plaintiff argues the court erred in failing to take appropriate remedial action during defendant's cross-examination of Arch's dispatcher, Bob Naylor. He denied saying anything to plaintiff intended as discriminatory, and stated he opposed racial discrimination. Defense counsel then asked Naylor: "Are you a religious man?" Plaintiff timely objected and, after a sidebar discussion, the court sustained the objection.[9] Plaintiff now asserts that "[w]ithout a specific instruction to disregard that question and an admonishment to defense counsel, the jury had several minutes to think about the question and that Plaintiff was trying to prevent the jury from knowing that Mr. Naylor was a religious man."[10]

"The decision of whether to give or exclude a particular jury instruction is committed

---

[8] Had defendant been put to the expense of incurring attorneys' fees to file a response to the instant motion, the result probably would be different.

[9] Fed. R. Evid. 610 proscribes the bolstering or impeachment of witnesses based upon their religious beliefs. During trial, the court sustained plaintiff's objection, first on various grounds under Fed. R. Civ. 403, and then under Fed. R. Evid. 610.

[10] Doc. 92, at 2.

to the sound discretion of the trial court."[11]  "In reviewing jury instructions, the court must determine if the instructions properly state the law and provide the jury with ample understanding of the issues and the standards applicable."[12]  "The instructions must cover the issues presented by the evidence and accurately state law."[13]  "A new trial is warranted only when a failure to give an instruction is prejudicial in view of the entire record."[14]

In the preliminary charge to orient the jury, that is, just before opening statements and before any evidence in the case was presented, the court's notes reflect it instructed the jury substantially as follows:

> Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or the court's ruling on it.  If the objection is sustained, ignore the question.

There is nothing in the record from which it may be reasonably inferred that the jury ignored this instruction.[15]  To the contrary, the court presumes its instruction *was* followed by the

---

[11] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395, 1996 WL 568839, at *5 (D. Kan. Sept. 4, 1996) (citing *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996)).

[12] *Crumpacker v. Kansas*, No. 00-4044, 2004 WL 3186196, at *3 (D. Kan. Oct. 6, 2004) (*citing Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir.1988)); *see also Audiotext*, 1996 WL 568839, at *5 (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1517 (10th Cir. 1995)).

[13] *Crumpacker*, 2004 WL 3186196, at *3.

[14] *Id.* (citing *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir. 1994)).

[15] *Hillman v. U. S. Postal Serv.*, 169 F. Supp. 2d 1218, 1231 (D. Kan. 2001) (citing *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992) ("We presume jurors will

jury. In any event, the court finds any prejudice which plaintiff may have suffered from the court's decision not to specifically instruct the jury to disregard the question, or to admonish defense counsel, clearly does not warrant a new trial.

C.  Defendant's Closing Argument

Plaintiff asserts the court erred during closing argument when it did not take "appropriate and necessary remedial action after the Defendant intentionally started to show to the jury an excerpt from Plaintiff's videotaped deposition that was not in evidence."[16] Plaintiff's motion, not surprisingly, does not set out the contents of the video clip. Regardless, the court's notes indicate the jury saw and heard the following exchange on the television monitor:

> Defense Counsel:   When you [plaintiff] left, did you feel like Scott [Bridges, the branch manager] took your claims of discrimination seriously?
>
> Mr. Borders:   I guess.

At that point, plaintiff's counsel promptly (and correctly) objected, and both parties' attorneys approached the bench. The following colloquy took place out of the jury's hearing:

> Plaintiff's counsel:   Judge, it's not in evidence, so I would object to showing anything from the deposition just for the heck of it.
>
> Defense counsel:   This is his deposition transcript.
>
> Plaintiff's counsel:   But, it is not in evidence, your Honor. I can't get up and start

---

remain true to their oath and conscientiously follow the trial court's instructions.")).

[16] Doc. 93, at 2-3.

> reading stuff that's not in evidence.
>
> The Court:         [Plaintiff's] objection is sustained.

The proceedings then resumed in open court.

Plaintiff argues that "[a]lthough the objection was sustained, the damage had been done and Defendant was able to make its point that, from its perspective, Plaintiff had no credibility, since he must have been lying about something else."[17]  What plaintiff's exceptionally short motion fails to mention is that the trial record is devoid of any timely request by plaintiff that the court take any remedial action, whether for the jury to disregard the video clip, to admonish defense counsel, or otherwise.  The court finds the display of a very brief portion of plaintiff's videotaped deposition during closing argument was not sufficiently prejudicial to constitute grounds for a new trial.

D.  Racial Composition of Jury Pool

Plaintiff argues he is entitled to a new trial because no African-American individuals were on the jury panel.  The Seventh Amendment guarantees the right of trial by a jury of one's peers in suits of common law where the value in controversy exceeds twenty dollars.  A jury of one's peers means a "fair sampling of a cross-section of the citizenry" of the community.[18]  The Supreme Court has held that in order to establish a violation of the fair-cross-section requirement of the Seventh Amendment, a plaintiff must show

---

[17] Doc. 92, at 3.

[18] *Henry v. State Farm Ins. Co.*, 788 F. Supp. 241, 244 (E.D. Pa. 1992).

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[19]

Here, plaintiff has not produced *any* evidence that the representation of African-American individuals in venires from which juries are selected is unfair or unreasonable in relation to the number of African-American individuals in the community. Nor has plaintiff shown that any such under-representation is due to systematic exclusion of African-Americans in the jury selection process.

Further, although plaintiff does not rely upon it, the Jury Selection and Service Act of 1968 provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."[20] The standard under the Jury Selection and Service Act is the same as that under the Seventh Amendment.[21] The system employed by the District of Kansas for selecting petit juries has been found to satisfy the requirements of the Jury Selection and Service Act and even the Sixth Amendment in the criminal context.[22] Accordingly, the court denies plaintiff's motion for a new trial based on

---

[19] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

[20] 28 U.S.C. § 1861.

[21] *See Hardman v. Autozone, Inc.*, No. 02-2291, 2005 WL 1896249, at *5 (D. Kan. Aug. 9, 2005).

[22] *See United States v. Chanthadara*, 230 F.3d 1237, 1256-57 (10th Cir. 2000), *cert. denied*, 534 U.S. 992 (2001); *United States v. Shinault*, 147 F.3d 1266, 1270-73 (10th Cir.

the composition of the venire.

E.    Sufficiency of the Evidence

Plaintiff argues the evidence was insufficient to support the defense verdict.[23]  Where a motion for a new trial is based on the verdict being against the weight of the evidence, the motion generally presents a question of fact, not law, and is committed to the trial court's discretion.[24]  The court should invoke its discretionary power only if the verdict was "clearly, decidedly or overwhelmingly against the weight of the evidence."[25]

Plaintiff maintains he is entitled to judgment as a matter of law because no reasonable jury could have found in favor of defendant on his race discrimination claim.  For the reasons explained below, the court disagrees.

Plaintiff does not even attempt to apply the standard for a new trial to the record in this case.[26]  It suffices to say the court finds the jury's verdict in this case was amply supported by the evidence.  This is true even though the court believes the evidence at trial was such that the jury reasonably could have found for either party on plaintiff's race

---

1998), *cert. denied*, 525 U.S. 988 (1998).

[23] Plaintiff asserts as four ostensibly separate grounds for a new trial that 1) the jury verdict was against the weight of the evidence, 2) the verdict was against the weight of the credible evidence, 3) the verdict was against the greater weight of the evidence, and 4) the verdict was against the greater weight of the credible evidence.

[24] *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996).

[25] *Veile v. Martinson*, 258 F.3d 1180, 1188 (10th Cir. 2001).

[26] Indeed, plaintiff's motion does not provide *any* statement of facts as required by D. Kan. Rule 7.6(a)(2).

discrimination claim, as reflected by the fact that the court submitted this case to the jury after denying defendant's motion pursuant to Fed. R. Civ. P. 50 for judgment as a matter of law (docs. 82 & 87).

Plaintiff testified that co-workers, including Bob Naylor, his supervisor, made racist remarks and engaged in racist behavior in his presence, and defendant's management was aware of this alleged conduct. Of course, had the jury credited plaintiff's testimony, the jury could have found that race was a determining factor in defendant's decision to terminate plaintiff. But there were numerous instances of internal inconsistencies in plaintiff's own testimony, as well as conflicting testimony by other witnesses. Based on this conflicting evidence, the jury permissibly could have concluded that race was not a determining factor in defendant's decision to terminate plaintiff.

The court must therefore defer to the jury's credibility determinations and its ultimate finding that defendant was not liable. Accordingly, plaintiff's motion for new trial based on the weight of evidence is denied.

### IV.  Conclusion and Order

In consideration of the foregoing,

IT IS HEREBY ORDERED that plaintiff's motion for a new trial **(doc. 92)** is denied.

Dated this 30th day of January, 2009, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge